IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 13-00514-SOM-03 |
| | ) | CR. NO. 13-00653-SOM-01 |
| Plaintiff, | ) | |
| | ) | ORDER DENYING DEFENDANT JOHN |
| | ) | PENITANI'S MOTION FOR |
| | ) | COMPASSIONATE RELEASE |
| vs. | ) | |
| | ) | |
| JOHN PENITANI, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT JOHN PENITANI'S
MOTION FOR COMPASSIONATE RELEASE**

**I.      INTRODUCTION.**

In 2015, following two guilty pleas,[1] Defendant John Penitani was sentenced to 168 months of incarceration, five years of supervised release, and a $200 special assessment. *See* ECF No. 415. Given good time credit, Penitani, who is 41 years old, has a projected release date of June 11, 2025. ECF No. 720, PageID # 5574.  Penitani has been in custody since his arrest on May 14, 2013, meaning that he has served approximately eight years of his 14-year sentence.  *See* ECF No. 431, PageID # 1968.

---

[1] Penitani was charged with conspiracy to possess methamphetamine with the intent to distribute in two separate cases, Cr. No. 13-00514-SOM-03 and Cr. No. 13-00653-01. This court imposed a concurrent sentence for both convictions in the same hearing.  Thus, although Penitani's motion for compassionate release affects two different convictions, this court resolves his request in a single order.  Unless otherwise indicated, the citations in this order are to the docket in Cr. No. 13-00653-01.

Penitani is incarcerated at Big Spring FCI in Texas. FCI Big Spring currently houses 977 inmates, with 861 at the FCI and 116 in an adjacent camp. https://www.bop.gov/locations/institutions/big/ (last visited June 3, 2021). As of the morning of June 3, 2021, Big Spring FCI has 4 active COVID-19 cases in its inmate population and no active COVID-19 cases in its staff, with 711 inmates and 11 staff members having recovered from it. https://www.bop.gov/coronavirus/ (last visited June 3, 2021). Three inmates have died. *Id.* Penitani contracted COVID-19 in August 2020. ECF No. 718, PageID # 5326. He states that he believes that he has suffered long-term effects from his infection, such as nerve damage, shortness of breath, headaches, and nose bleeds, but he does not provide any documentation in support of his claims that those symptoms stem from COVID-19.

Additionally, as of the morning of June 3, 2021, 619 inmates and 66 staff members at Big Spring FCI have been fully vaccinated against COVID-19. https://www.bop.gov/coronavirus/ (last visited June 3, 2021). Penitani appears to be one of those fully vaccinated inmates. ECF No. 720-1, PageID # 5589.

Penitani now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). The primary basis for his motion is the COVID-19 pandemic. Penitani claims that his diabetes, hypertension, and obesity make him more likely to suffer serious complications if he contracts COVID-19 again. ECF No. 717-4,

PageID # 5132-33. After considering Penitani's medical conditions, the time remaining on his sentence, and his history, this court concludes that he has not demonstrated that extraordinary and compelling circumstances warrant a reduction in his sentence at this time. Accordingly, his motion for compassionate release is denied.

**II.      ANALYSIS.**

Penitani's compassionate release request is governed by 18 U.S.C. § 3582(c)(1)(A), which provides:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

In other words, for the court to exercise its authority under § 3582(c)(1)(A), it must (1) find that the defendant exhausted his administrative remedies or that 30 days have passed since he filed an administrative compassionate relief request; (2) also

find, after considering the factors set forth in section 3553(a), that extraordinary and compelling reasons warrant a sentence reduction; and (3) find that such a reduction is consistent with the Sentencing Commission's policy statements (assuming there are any policy statements applicable to this motion).  *See United States v. Scher*, 2020 WL 3086234, at *2 (D. Haw. June 10, 2020).

### A. **Penitani Has Satisfied the Time-lapse Requirement of 18 U.S.C. § 3582(c)(1)(A).**

On January 24, 2021, Penitani submitted an email to the warden of his prison that the Government "liberally construe[s]" as a request for compassionate release.  ECF No. 720, PageID # 5578.  The Government is therefore not contesting that Penitani has satisfied the time-lapse requirement of 18 U.S.C. § 3582(c)(1)(A).  *Id.*

### B. **This Court Has Discretion in Determining Whether Extraordinary and Compelling Reasons Justify a Reduced Sentence.**

This court turns to § 3582(c)(1)(A)'s second requirement: whether extraordinary and compelling reasons warrant a sentence reduction.  In orders addressing compassionate release motions in other cases, this court has expressly recognized that it possesses considerable discretion in determining whether a particular defendant has established the existence of extraordinary and compelling reasons that justify early release.

This court has also stated that, in reading

4

§ 3582(c)(1)(A) as providing for considerable judicial discretion, the court is well aware of the absence of an amended policy statement from the Sentencing Commission reflecting the discretion given to courts when Congress amended the statute to allow inmates themselves to file compassionate release motions. *United States v. Mau*, 2020 WL 6153581 (D. Haw. Oct. 20, 2020); *United States v. Scher,* 2020 WL 3086234, at *2 (D. Haw. June 10, 2020); *United States v. Cisneros*, 2020 WL 3065103, at *2 (D. Haw. Jun. 9, 2020); *United States v. Kamaka*, 2020 WL 2820139, at *3 (D. Haw. May 29, 2020). Specifically, this court has recognized that an Application Note to a relevant sentencing guideline is outdated. This court continues to view its discretion as not limited by Sentencing Commission pronouncements that are now at odds with the congressional intent behind recent statutory amendments. *Mau*, 2020 WL 6153581; *see also United States v. Brooker*, 976 F.3d 228, 235-36 (2d Cir. 2020) ("[W]e read the Guideline as surviving, but now applying only to those motions that the BOP has made."); *cf. United States v. Ruffin*, 978 F.3d 1000, 1007-08 (6th Cir. 2020) (noting that some courts have held that the Application Note is not "applicable," but not deciding the issue)*.*

Recently, the Ninth Circuit has expressly recognized that there is no applicable Sentencing Commission policy statement governing compassionate release motions filed by

defendants under § 3582(c)(1)(A). Nevertheless, while the Sentencing Commission's statements in U.S.S.G § 1B1.13 are not applicable policy statements that are binding on this court, they may inform this court's discretion. *See United States v. Aruda*, 993 F.3d 797, 801-02 (9th Cir. 2021) (per curiam).

> **C. Penitani Has Not Demonstrated That Extraordinary and Compelling Circumstances Justify His Early Release at This Time, or That the Requested Reduction Would Be Consistent with Any Applicable Sentencing Commission Policy Statement.**

Penitani contends that this court should exercise its discretion and find that extraordinary and compelling circumstances justify his early release. He relies primarily on the risks he faces if he contracts COVID-19 for a second time despite being fully vaccinated. While the court acknowledges the seriousness of Penitani's concerns, the COVID-19 pandemic does not justify early release at this time.

According to Penitani, he suffers from several conditions that may present particular risks relating to COVID-19, including type 2 diabetes, obesity (Penitani is obese, with a BMI of 40.8), and hypertension. ECF No. 717-4, PageID # 5133. Under the CDC's guidance, those conditions may increase his risk of a severe illness if he contracts COVID-19.[2] However, Penitani is 41 years old; his age does not place him in the

---

[2] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 3, 2021).

highest risk category.  While this court certainly agrees that Penitani has legitimate concerns about contracting COVID-19, his medical conditions, standing alone, are not exceptional and compelling reasons that warrant a reduction in sentence.

Several factors mitigate the risks that Penitani faces.  First, in August 2020, Penitani tested positive for COVID-19.  He says that he believes that he has suffered long term effects from his infection, such as nerve damage, shortness of breath, headaches, and nose bleeds, but he does not provide any documentation in support of the assertion that the conditions relate to COVID-19.  ECF No. 717-4, PageID # 5122, 5133.  Those conditions certainly are concerning, in any event, but it does not appear that Penitani suffered from some of most serious complications associated with COVID-19.  It is not clear that he is likely to develop such complications if reinfected.

Second, although it is possible, it is unlikely that Penitani will be infected a second time, especially given that he is fully vaccinated against COVID-19.  The CDC has acknowledged that while "[c]ases of reinfection with COVID-19 have been reported, [they] remain rare."  *See* https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited June 3, 2021); *see also* https://www.cdc.gov/vaccines/covid-19/info-by-product/pfizer/pfizer-bioNTech-faqs.html ("Clinical trial data demonstrated vaccine efficacy was 95.0%

7

against symptomatic, laboratory-confirmed COVID-19 in persons without evidence of previous SARS-CoV-2 infection following receipt of 2 doses of Pfizer-BioNTech COVID-19 Vaccine.") (last visited June 3, 2021).  This court is in no position to make a definitive determination about immunity, but the combination of Penitani's positive test, the possibility of some form of immunity from his August 2020 infection, and his status as fully vaccinated against COVID-19 cannot be ignored in any evaluation of whether there are extraordinary and compelling reasons warranting a reduction in his sentence.

Third, as of the morning of June 3, 2021, Big Spring FCI has 4 active cases of COVID-19 in its inmate population and no active cases of COVID-19 among staff members.  Big Spring FCI has had 711 inmates and 11 staff members recover from COVID-19, and 3 inmates have died.  Those numbers demonstrate that Big Spring FCI earlier had a significant COVID-19 problem.  Its COVID-19 problem has been reduced but certainly not eliminated.  Nevertheless, the relatively low number of current COVID-19 cases does not place Penitani at great risk of exposure to COVID-19, especially when 619 of the 977 inmates (63.4%) at Big Spring FCI, including Penitani, have been fully vaccinated against COVID-19.

In evaluating whether early release is justified, this court also must consider the factors set forth in § 3553(a).  Two considerations are particularly relevant.  The first is the

amount of time Penitani has served.  Penitani has served approximately 96 months of his sentence, with a projected release date of June 11, 2025.  He has served a significant portion of his sentence, but this is not a case in which an individual is on the eve of release.

Penitani has a history of violent conduct that gives this court concern about whether he may pose a danger to the community if released at this time.  In addition to his present convictions, which arose out of Penitani's involvement with methamphetamine distribution organizations, *see* ECF No. 431, PageID # 1976, 1986, 1990-91, Penitani's criminal history includes two convictions for assault and one conviction for possession of a controlled substance.  *Id.* at 1995-96.  His second assault conviction, in 2004, involved an assault on a man who had urinated in a truck owned by Penitani's co-defendant.  A witness reported that Penitani "stomped on the victim's head four to five times" while the victim lay motionless in the street, and another witness was "disturbed by [Penitani's] lack of remorse . . . as he carried on as if nothing happened[.]"  *Id.* at 1996.

While in prison, Penitani has been disciplined on seven different occasions.  Those occasions involved refusing to accept work assignments (on four occasions), being insolent to a staff member (on two occasions), and phone abuse.  ECF No. 720-2, PageID # 5590-91.  These incidents do not appear to have involved

violence, and the court realizes that the seven instances must be viewed in the context of the 96 months he has served.

Under § 3582(c)(1)(A), only extraordinary and compelling reasons can justify a reduction in an inmate's sentence.  Having considered the amount of time remaining on Penitani's sentence, his history, and the totality of the medical information he has submitted, this court determines that the reasons raised by Penitani do not rise to the level of being extraordinary and compelling reasons warranting a reduction in his sentence at this time.

### III.     CONCLUSION.

Penitani's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is denied.

It is so ordered.

DATED: Honolulu, Hawaii, June 3, 2021.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Penitani*, CR. NOs. 13-00514-SOM-03 and 13-00653-SOM-01, ORDER DENYING DEFENDANT JOHN PENITANI'S MOTION FOR COMPASSIONATE RELEASE